FILED
2023 Feb-02  PM 02:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **U.S. SPECIALTY INSURANCE** | ) | |
| **COMPANY, a corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **v.** | ) | **2:21-cv-00378-MHH** |
| | ) | |
| **TRAWICK CONTRACTORS,** | ) | |
| **INC., a corporation,** | ) | |
| | | |
| **Defendant.** | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The parties in this case disagree over the extent of U.S. Specialty Insurance Company's legal obligation as a surety for a construction subcontractor. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, USSIC has asked the Court to find as a matter of law that it does not have to cover the legal and consulting expenses that Trawick Contractors, Inc. incurred when subcontractor Mata, the company that USSIC bonded, failed to properly perform work for a school construction project.

To respond to USSIC's request, the Court first summarizes the standard that governs a Rule 56 summary judgment motion. Then, consistent with that standard, the Court describes the evidence relevant to USSIC's motion. Finally, the Court evaluates the parties' evidence, applying the law that governs the coverage question.

1

**I.**

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To demonstrate a genuine dispute as to a material fact that precludes summary judgment, the party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When considering a motion for summary judgment, a district court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in the non-moving party's favor. *White v. Beltram Edge Tool Supply, Inc*., 789 F.3d 1188, 1191 (11th Cir. 2015). Therefore, in this opinion, the Court views the summary judgment evidence in the light most favorable to Trawick.

**II.**

Trawick Contractors, Inc. contracted with the Jefferson County Board of Education to perform a school construction project. (Doc. 34, p. 4, ¶ 2; Doc. 37-1,

pp. 8-10). Trawick, in turn, subcontracted the electrical work for the project to Mata Electric, LLC. (Doc. 34, p. 4, ¶ 2; Doc. 37-1, pp. 19-29). The Mata subcontract is dated July 11, 2019. (Doc. 37-1, p. 19). On August 30, 2019, USSIC issued a performance bond for Mata's electrical work on the school construction project. (Doc. 34, pp. 9-12; Doc. 37-1, pp. 31-34). The performance bond identifies Mata as the principal, USSIC as the surety, and Trawick as the obligee for the bond. (Doc. 37-1, p. 31). The performance bond expressly references the July 11, 2019 subcontract between Trawick and Mata, (Doc. 37-1, p. 31), but the performance bond does not expressly incorporate the terms of that subcontract.

While the school construction project was underway, Trawick declared Mata in default, terminated its subcontract with Mata, retained another electrical company to complete the work that Mata was obligated to perform on the project, and sought payment from USSIC under the performance bond for electrical work performed in the wake of Mata's default. (Doc. 34, p. 5, ¶ 3).

On March 11, 2021, USSIC filed this action and asked the Court to declare its obligations under the surety bond. (Doc. 1). Trawick counterclaimed for the cost of completing the electrical work. (Doc. 11). After months of discovery, USSIC issued a claim determination letter to Trawick with a payment of $654,550.74. (Doc. 34, p. 5, ¶ 4). USSIC refused Trawick's demand for payment of $295,060.81 in legal fees and $52,252.43 in consulting fees, citing paragraphs 3 and 4 of the performance

bond.  Those paragraphs provide:

> (3) The Balance of the Subcontract Price, as defined below, shall be credited against the reasonable cost of completing performance of the Subcontract. If completed by the Obligee, and the reasonable cost exceeds the Balance of the Subcontract Price, the Surety shall pay to the Obligee such excess, but in no event shall the aggregate liability of the Surety exceed the amount of this bond. If the Surety arranges completion or remedies the default, that portion of the Balance of the Subcontract Price as may be required to complete the Subcontract. [*sic*]

> (4) . . . The term "Balance of the Subcontract Price" as used in this paragraph shall mean the total amount payable by Obligee to Principal under the Subcontract and any amendments thereto, less the amounts heretofore properly paid by Obligee under the Subcontract.

(Doc. 34, p. 5, ¶ 5; *see also* Doc. 34, pp. 9-10).

For its part, to support its demand for payment of legal and consulting fees from the performance bond, Trawick argues that the performance bond provides that USSIC and Mata are jointly and severally bound to Trawick for the sum of more than $1.9 million.  (Doc. 36, p. 10).  Trawick highlights the following provisions in its subcontract with Mata to which, Trawick argues, USSIC is bound:

> § 10 (stating that the cost of completing the work under the electrical subcontract includes costs for managerial, legal or administration services);

> § 22 (agreeing to defend, indemnify, and save harmless Trawick against any claims, cost, expenses, demand or liability including all attorney's fees and litigation expenses connected therewith);

§ 29 (deducting direct and indirect expenses, including attorneys' fees, from the subcontract balance incurred by Trawick after any default by Mata);

§ 37 (agreeing to defend, indemnify, and hold harmless Trawick from and against all liens and bond claims, including attorneys' fees and litigation expenses);

§ 44 (agreeing that Mata is responsible for Trawick's attorneys' fees if Mata breaches the subcontract, and Trawick sues to enforce its rights under the subcontract).

(Doc. 36, p. 9).

Trawick incurred consulting fees when it contracted with Pearson Management Group to calculate the total amount Trawick spent to complete Mata's work on the school construction project. (Doc. 37-1, p. 5, ¶¶ 15, 19). Trawick incurred legal fees for which it seeks payment in its effort to recover under the USSIC performance bond. (Doc. 37-1, p. 5, ¶¶ 18, 19).

## III.

USSIC argues that it does not have to cover Trawick's legal and consulting fees because Mata's performance bond does not mention legal or consulting fees, and the bond does not incorporate the terms of the contract between Trawick and Mata or make USSIC a party to that contract - the contract contains attorney fee and litigation expenses provisions. Trawick contends that under the bond, USSIC and Mata are jointly and severally liable for all of Mata's obligations under the

subcontract, and the performance bond incorporates the terms of Trawick's subcontract with Mata.

The Alabama Supreme Court has examined similar arguments in several cases.[1]  The Alabama Supreme Court has explained that generally, "a surety is not liable for attorneys' fees incurred by [an] obligee [] in the absence of [a] statute, unless there is an express provision in the contract or bond binding the principal to that effect."  *Mason v. City of Albertville*, 158 So. 2d 924, 926 (Ala. 1963).  Under Alabama law, when a company "procures a surety to guaranty the faithful performance" of the company's work under a contract, the surety supplies the guaranty "with reference to the [underlying] contract as made.  The terms of the [underlying] contract become a part of the terms of the bond."  *Mason*, 158 So. 2d at 926 (quoting *First Nat'l Bank v. Fid. & Deposit Co.*, 40 So. 415, 417 (Ala. 1906)). Stated differently:  "A surety is jointly and severally liable with the principal on the underlying obligation."  *SouthTrust Bank of Ala., N.A. v. Webb-Stiles Co., Inc.*, 931 So. 2d 706, 708 n. 3 (Ala. 2005) (citing *Nat'l Am. Ins. Co. v. Boh Bros. Constr. Co.*, 700 So. 2d 1363, 1366 (Ala. 1997) ("Suretyship is a three-party relationship among

---

[1] The parties seem to agree that Alabama law governs the parties' dispute.  (Doc. 35, p. 6; Doc. 36, p. 16).  The bond does not contain a choice of law provision.  (Doc. 34, pp. 9-12).  The contract between Trawick and Mata does not contain a choice of law provision, but it provides that if a lawsuit is brought to enforce the contract, Trawick must file a complaint in the Circuit Court of Jefferson County, "and the Subcontractor and its surety [] consent to the jurisdiction of such Court for any such legal proceedings."  (Doc. 37-1, p. 25, ¶ 40).

a principal, its surety, and the oblige to whom the principal and surety are jointly and severally bound for performance.")).

In *Mason*, the Alabama Supreme Court considered whether a surety was obligated to pay attorney's fees and engineering services when the underlying contract provided: "in case of default on the part of the Contractor, all expenses incident to ascertaining and collecting losses suffered by the Owner under the Bond, including both engineering and legal services shall lie against the Contract Bond for performance of the work." *Mason*, 158 So. 2d at 926; *see also Maryland Cas. Co. v. Cunningham*, 173 So. 506, 509 (Ala. 1937) (where underlying contract provided for obligee's recovery of attorney's fees in the event of a breach, those fees "were damages suffered on account of the breach of the contract and came within the protection of this bond"). The Alabama Supreme Court held that attorney fees and fees for professional services were recoverable under the bond. *Mason*, 158 So. 2d at 927.

*Mason* is different from this case in that the bond in *Mason* expressly incorporated the terms of the underlying contract. *Mason*, 158 So. 2d at 926. There is no such language in the performance bond USSIC provided to guaranty Mata's work on Trawick's contract with the Jefferson County Board of Education. But performance bonds are contracts, and the general rules of contract interpretation govern them. *Fidelity & Deposit Co. of Maryland v. Jefferson Cnty. Comm'n*, 756

7

F. Supp. 2d 1329, 1335 (N.D. Ala. 2010) (applying Alabama law). Under Alabama law, a court should read together "two or more instruments" signed by the same parties "in reference to the same subject matter." *Haddox v. First Bank of Montgomery, N.A.*, 449 So. 2d 1226, 1229 (Ala. 1984); *see also Ingalls Iron Works Co. v. Ingalls*, 256 Ala. 124, 127 (1951) ("[D]ifferent writings, executed at the same time and relating to the same subject-matter, will be construed as one instrument."); *Fidelity & Deposit Co.*, 756 F. Supp. 2d at 1337 ("A generally accepted rule of contract law is that where a writing expressly refers to and sufficiently describes another document, that other document should be interpreted as part of the writing.") (citing *McDougle v. Silvernell*, 738 So. 2d 806, 808 (Ala. 1999)) (additional citations omitted). Applying this general rule of contract interpretation to a performance bond and the construction contract for which the bond was acquired, the Alabama Supreme Court explained:

> In construing the bond in question, we must look to the construction contract to which the bond refers and which refers to the bond. It is well settled that "two writings connected by reference one to the other . . . with respect to the same subject matter and proved to be parts of an entire transaction constitute but a single contract as if embodied in one instrument."

*Bill White Roofing & Specialty Co., Inc. v. Cedric's, Inc.*, 387 So. 2d 189, 191 n. 3 (Ala. 1980) (quoting *Moorer v. Tensaw Land & Timber Co.*, 20 So. 2d 105, 107

(Ala. 1944)).[2]

Here, the performance bond describes the subcontract between Trawick and Mata and the work that Mata was obligated to perform under that subcontract. (Doc. 37-1, p. 31). The subcontract between Trawick and Mata obligated Mata to "furnish

---

[2] The concept is stated well in *Pacific Employers Ins. Co. v. City of Berkeley*:

> Surety contracts are construed according to the same rules that govern interpretation of all contracts. (*U.S. Leasing Corp. v. DuPont* (1968) 69 Cal.2d 275, 284, 70 Cal.Rptr. 395, 444 P.2d 65; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 521, p. 444 [hereafter Witkin].) Civil Code section 1642 provides: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." This language has been broadened by judicial construction, so that it has been applied to several writings, even though they are not "contracts," for example. "Nor is the statute limited to contracts signed by the same parties and identifying the same subject matter. It applies to 'instruments,' 'papers' and 'contracts,' whether they expressly refer to each other or it appears from extrinsic evidence that they were executed as part of one transaction. [Citations.]" (Witkin, *supra,* Contracts, § 525, pp. 447–448.)

> Thus, as a general rule, a contract performance bond will be read with the contract. "Since the express purpose of the contract performance bond is to secure the performance of the specified contract, it is obvious that the bond and the contract ... should be construed together—this for the obvious reason that when a party enters into a contract to do certain work on certain terms, and procures a surety to guarantee the faithful performance of the work, the surety necessarily contracts with reference to the contract as made; otherwise it would not know what obligation it was assuming. And this is particularly so where the bond expressly declares that the contract is made a part of the bond and the terms of the contract are incorporated into the bond. Otherwise stated, the liability of a surety on a contractor's performance bond does not rest solely on the terms of the bond, but grows out of and is dependent upon the terms of the contractor's contract, for the obvious reason that there can be no obligation on the part of the surety unless there has been a default by the contractor on his contract." (Couch, *supra,* § 47:20, pp. 240–242, fns. omitted.)

158 Cal. App. 3d 145, 150-51 (1984).

to [Trawick] an adequate performance bond and a separate payment bond in form and amount and with surety acceptable to [Trawick]. Bonds will also cover assessed liquidated damages if fault of [Mata]." (Doc. 37-1, p. 21, Section 20). Thus, Court must read together the "two writings connected by reference one to the other . . . with respect to the same subject matter." *Cedric's, Inc.*, 387 So. 2d at 191 n.3. In doing so, the Court is aware that the rider to the performance bond contains two express coverage restrictions, one that limits the timeframe for losses claimed under the bond "[n]otwithstanding anything to the contrary" in the subcontract and one that excludes liability for mold and other environmental concerns "[n]otwithstanding anything to the contrary" in the subcontract. The rider does not limit or exclude claims for attorney fees or consulting fees. The text of the performance bond also contains a restriction: "The combined aggregate liability of the Surety shall be limited to the above stated sum [of $1,918,892.17], notwithstanding anything to the contrary in the below stated subcontract [between Trawick and Mata]." (Doc. 34, p. 9). Mindful of the express restrictions in the performance bond, the Court reads the performance bond and the Trawick-Mata subcontract together to provide that USSIC must cover Trawick's reasonable attorney's fees so long as the total amount USSIC pays under the performance bond does not exceed $1,918,892.17.

The law that USSIC cites does not require a different result. USSIC relies on the Alabama Supreme Court's statement that "a surety in Alabama has the right to

stand on its contract and to exact compliance with its stipulations, which may not be extended by construction or implication beyond the precise terms of the agreement." *Hightower & Co. v. U.S. Fidelity & Guar. Co.*, 527 So. 2d 698, 703 n.1 (Ala. 1988). This statement is not in tension with the rules discussed above. Judge Hancock's decision in *Fidelity & Deposit Co.* does not change the outcome either. Indeed, in *Fidelity & Deposit Co.*, Judge Hancock concluded that the default provisions in a performance bond were not inconsistent with the termination provisions in the underlying construction contract, which was incorporated into the bond, so that the provisions could be read together and reconciled. 756 F. Supp. 2d at 1335, 1337. The Court has done just that; the Court has determined that the terms of USSIC's performance bond and the terms of the Trawick-Mata subcontract are not in conflict with respect to attorney and consulting fees, so the Court has read the two writings connected by reference to one another together and reconciled the two.

## IV.

For the reasons discussed above, the Court denies USSIC's motion for summary judgment. In reaching its decision, the Court relied almost entirely on the terms of the relevant construction contracts and the terms of the performance bond. The Court did not consider argumentative statements in Ms. Farley's declaration, and the Court summarized both parties' arguments in the opinion only to identify the parties' respective positions. Because the Court did not rely on the information

to which USSIC objects in its motion to strike, the Court denies the motion as moot. (Doc. 39).

In light of this opinion, the Court gives the parties 30 days to attempt to resolve this matter. The parties shall file a joint status report at the conclusion of the 30-day period. The Clerk of Court shall please TERM Docs. 32 and 39.

**DONE** and **ORDERED** this February 2, 2023.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE